**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **DEMETRIA MICHELE BROWN**, <br><br> Defendant. | No. 13-04046-01-CR-C-BCW |

**PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Tammy Dickinson, United States Attorney, and Anthony P. Gonzalez, Assistant United States Attorney, and the defendant, Demetria Michele Brown ("the defendant"), represented by Troy K. Stabenow.

The defendant understands and agrees that this plea agreement is only between [him/her] and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Counts 1 and 12 of the indictment, charging her with violations of 18 U.S.C. § 1343, that is, wire fraud. By entering into this plea agreement, the defendant admits that she knowingly committed this offense, and is, in fact, guilty of this offense.

The defendant also agrees to and hereby does plead guilty to Count 22 of the indictment, charging her with a violation of 18 U.S.C. § 1028A(a)(1), that is, aggravated identity theft. By entering into this plea agreement, the defendant admits that she knowingly committed this offense, and is, in fact, guilty of this offense.

3. **<u>Factual Basis for Guilty Plea</u>.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

> The Internal Revenue Service (IRS) was an agency of the United States Department of the Treasury, and was responsible for administering and enforcing the tax laws of the United States, and collecting taxes owed to the United States. The Department of Revenue (MDOR) was an executive agency of the State of Missouri, and was responsible for administering and enforcing the tax laws of the State of Missouri and collecting taxes owed to the State. IRS procedures permitted taxpayers to file U.S. Individual Income Tax returns by mail, or electronically to an approved IRS service center. Taxpayers filing an income tax return could elect to have any refund due to be paid by electronic direct deposit into a specified bank account, by check, or by prepaid debit card. Similarly, MDOR procedures permitted taxpayers to file Missouri state tax returns by hand delivery, mail, or electronically to MDOR. Taxpayers filing a state income tax return could elect to have any refund due be paid by electronic direct deposit into a specified bank account, debit card account or by check. In order for a taxpayer to receive a refund by electronic direct deposit or other similar electronic transaction, the taxpayer had to provide specific information to the IRS and/or MDOR such as the bank's routing number, a specific account number, or a specific debit card account number.
>
> On or about February 22, 2011, in Jefferson City, Missouri, Special Agents from the FBI and IRS-CI met with the Special Agent in Charge of the Missouri Department of Revenue ("MDOR") Compliance and Investigation Bureau, and the Administrator of the Missouri Department of Revenue, Criminal Investigation Bureau. At the meeting DEMETRIA MICHELE BROWN ("BROWN"), an Illinois resident, was identified as a person who, from 2008 until 2011, had initiated a scheme to submit false and fraudulent state income tax returns to the State of Missouri in order to generate a refund which was not due and owing, and which refund went into an account or accounts which BROWN controlled. The investigation continued, and also revealed that, for the same period, BROWN's scheme also involved submitting false and fraudulent federal income tax returns to the Internal Revenue Service in order to generate a refund which was not due and owing, and which refund also went into accounts which BROWN controlled.

The scheme involved BROWN obtaining personal identification information, including names, Social Security numbers, and dates of birth of other persons without the knowledge of those persons or their consent. BROWN would then separately complete U.S. individual income tax returns and Missouri state income tax returns for persons using the personal identification information she had obtained, adding other information which was false and fraudulent, including but not limited to, the address, place of employment, wages earned, taxes withheld, and the fact that a refund was due. It was a part of BROWN's scheme that she would and did submit the fraudulent tax returns to the IRS and MDOR electronically, and provided information on the returns which directed where the IRS and MDOR should send the fraudulent refunds, which information included but was not limited to, bank routing numbers, specific account numbers, and debit card account numbers. The accounts or cards to which the fraudulently generated returns were sent were controlled by BROWN, and allowed her to withdraw the fraudulently generated refunds. In short, the scheme, as applied to both the IRS and MDOR, involved BROWN fraudulently completing and causing to be completed, and then submitting electronically, federal and state tax returns for various individuals in a manner to generate refunds which were not, in fact, due to anyone.

At all times material, BROWN lived in Fairview Heights, Illinois, and worked at an Internal Revenue Service Office in St. Louis, Missouri.

The fraudulent activity involved electronically filed and submitted state tax return forms using e-mail address dbrown54@charter.net to MDOR in Cole County, Missouri, for the tax years 2007-2010. Two IP addresses for electronically filed state income tax returns were identified, and these were assigned to internet and cable provider Charter Communications ("Charter") customer account in the name of B.W., with a service and billing address of 1 Bountiful Drive, Fairview Heights, Illinois. Charter provided an e-mail address for this account of dbrown54@charter.net. The majority of the federal tax returns submitted pursuant to the scheme were also sent to the Western District of Missouri.

MDOR determined that, between September 2007 and March 2011, 29 fraudulent states income tax refunds had been deposited and directed to three specific Uniform Transfers to Minors Act ("UTMA") accounts, all of which had been opened at Woodforest National Bank, O'Fallon, Illinois ("Woodforest") by BROWN in the names of three of BROWN's children. BROWN is listed as the Custodian on each account. Agents documented that, around June 30, 2009, Woodforest mailed quarterly bank statements for the above listed UTMA accounts to 1 Bountiful Drive, Fairview Heights, Illinois 62208, the same address identified by Charter for the two IP addresses associated with numerous returns (see above). Earlier statements for the UTMA accounts had been mailed to 5 Meckfessel Drive, Fairview Heights, Illinois 62208 (BROWN's prior address).

BROWN also had a personal account at Woodforest, which listed an address of 1 Bountiful Drive, Fairview Heights, Illinois 62208.

During the period of the fraud, BROWN also maintained accounts at Mutual Savings Credit Union ("MSCU") and Secure First Credit Union ("SFCU"), both in Birmingham, Alabama, each of which received Missouri income tax refunds deposited by wire into these accounts as a result of the submission of fraudulent state income tax returns. Additionally, refunds from income tax returns also went into anther SFCU account belonging to a relative of Brown's.

In 2010, BROWN opened an account at Gateway Regional Credit Union ("GRCU") in St. Louis, Missouri. Documents completed by BROWN when the account was opened represented that she was an IRS employee, and provided demetriabrown54@aol.com as her e-mail address. A copy of BROWN's driver's license provided to GRCU listed the Meckfessel Drive address. GRCU statements were mailed to the 1 Bountiful Drive address.

A search warrant was executed at BROWN's home on September 21, 2011, and during its execution, BROWN made several admissions to Agents, including an acknowledgement that she had opened the Charter account under the false name "Brandi Watkins" with e-mail address dbrown54@charter.net. When asked why, BROWN replied that she had planned to submit false income tax returns over the internet, and did not want the account information revealing her real name. BROWN also admitted to Agents that she had been electronically filing fraudulent U.S. individual income tax returns, Forms 1040, as well as fraudulent Missouri state income tax returns using that e-mail address. BROWN also admitted using her home computer to prepare and submit the fraudulent income tax returns, and explained other details of the fraudulent submissions, including how she submitted the forms, and how she generated a PIN for the fraudulent submissions, using a person's actual Social Security number.

The results of the search warrant yielded other items used in BROWN's scheme, including the names of employers used, false W-2 forms generated and used, notes regarding bank accounts used, accounts and billing statements for the Charter cable account and the Green Dot Visa debit card, on which certain refunds were deposited.

The IRS determined that there were in excess of 120 federal tax returns filed by BROWN pursuant to the fraudulent scheme, resulting in a loss of approximately $211,000. MDOR determined the loss to the State of Missouri to be approximately $115,000.

Pursuant to the scheme to defraud, among other acts BROWN committed the following: on September 22, 2009, BROWN knowingly transmitted and caused to be transmitted by means of wire communications in interstate commerce, a

purported Missouri state tax return in the name of I.P., SSN XXX-XX-XX70, which was filed for the tax year 2008 (Count 1); on October 2, 2009, BROWN knowingly transmitted and caused to be transmitted by means of wire communications in interstate commerce, a purported U.S. individual tax return in the name of R.T., SSN XXX-XX-XX80, which was filed for the tax year 2008 (Count 12); and on May 20, 2010, BROWN did knowingly possess and use, without lawful authority, the name and Social Security Number of V.M., during and in relation to the crime of wire fraud (Count 22).

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in paragraph 3 and other portions of this plea agreement will be used for the purpose of determining her guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment, as well as all other uncharged, related criminal activity, may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which she is pleading guilty.

5. **Statutory Penalties.** The defendant understands that, upon her pleas of guilty to Counts 1 and 12 of the indictment, charging her with wire fraud, the maximum penalty the Court may impose for each count is not more than twenty (20) years' imprisonment, not more than three (3) years' supervised release, a $250,000 fine, an order of restitution, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that these offenses are Class B felonies.

The defendant also understands that, upon her plea of guilty to Count 22 of the indictment, charging her with aggravated identity theft, the penalty the Court must impose is two (2) years' imprisonment consecutive to any sentences imposed as to Counts 1 and 12 of the

5

indictment, not more than one (1) years' supervised release, a $250,000 fine, and a $100 mandatory special assessment per felony count of conviction, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class E felony.

**6.** **<u>Sentencing Procedures</u>.** The defendant acknowledges, understands and agrees to the following:

      a.    in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

      b.    the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

      c.    As to Counts 1 and 12, in addition to a sentence of imprisonment, the Court may impose a term of supervised release of not more than three (3) years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one (1) year is imposed. As to Count 22, in addition to a sentence of imprisonment, the Court may impose a term of supervised release of not more than one (1) year; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one (1) year is imposed;

      d.    if the defendant violates a condition of her supervised release, the Court may revoke her supervised release and impose an additional period of imprisonment of up to three (3) years as to Counts 1 and 12, and of up to one (1) year as to Count 21, without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three (3) years as to Counts 1 and 12, and of up to one (1) year as to Count 22, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

      e.    the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

      f.    any sentence of imprisonment imposed by the Court will not allow for parole;

g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

h. the defendant may not withdraw her guilty pleas solely because of the nature or length of the sentence imposed by the Court; and

i. If the Court orders the defendant to pay restitution to the IRS, or MDOR, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. *See* 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to wire fraud and aggravated identity theft for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss the remaining counts of the indictment at sentencing. The United States also agrees to recommend that the defendant be sentenced at the low end of the applicable Guidelines range.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

7

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives her right to challenge the initiation of the dismissed or additional charges against her if she breaches this agreement. The defendant expressly waives her right to assert a statute of limitations defense if the dismissed or additional charges are initiated against her following a breach of this agreement. The defendant further understands and agrees that, if the Government elects to file additional charges against her following her breach of this plea agreement, she will not be allowed to withdraw her guilty pleas.

8. **Preparation of Presentence Report.** The defendant understands that the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character and conduct of the defendant, including the entirety of her criminal activities. The defendant understands these disclosures are not limited to the counts to which she has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel, and correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

8

Case 2:13-cr-04046-BCW   Document 33   Filed 06/01/15   Page 8 of 17

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's pleas of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw her pleas of guilty only if the Court rejects the plea agreement, or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that, if the Court accepts her pleas of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, she will not be permitted to withdraw her pleas of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

> a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";
>
> b. As to Counts 1 and 12, the applicable Guidelines section for the offense of conviction is U.S.S.G. §§ 2B1.1(a)(1) and (b)(1)(G), which provides for a base offense level of 19, based upon an aggregate loss amount of approximately $326,000. As to Count 22, the applicable Guidelines section for the offense of conviction is U.S.S.G. § 2B1.6(a), which requires a sentence of two (2) years consecutive to any other sentence imposed;
>
> c. The Government asserts that at least a 2-level increase is appropriate because of the number of victims (§ 2B1.1(b)(2)(A)(i));
>
> d. The defendant has admitted her guilt and clearly accepted responsibility for her actions, and has assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a pleas of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, she is entitled to a 3-level reduction pursuant to § 3E1.1(b)

9

of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant: (1) fails to abide by all of the terms and conditions of this plea agreement and her pretrial release; or (2) attempts to withdraw her guilty pleas, violates the law, or otherwise engages in conduct inconsistent with her acceptance of responsibility;

   e. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine her applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

   f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw her pleas of guilty;

   g. The United States agrees not to seek an upward departure from the Guidelines or a sentence outside the Guidelines range, and the defendant agrees not to seek a downward departure from the Guidelines or a sentence outside the Guidelines range. The agreement by the parties not to seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable";

   h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment) and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

   i. The defendant understands and agrees that the factual admissions contained in paragraph 3 of this plea agreement, and any admissions that she will make during her plea colloquy, support the imposition of the agreed upon Guidelines calculations contained in this agreement.

**11.**  **<u>Effect of Non-Agreement on Guidelines Applications</u>.**    The parties understand, acknowledge and agree that there are no agreements between the parties with respect

to any Sentencing Guidelines issues other than those specifically listed in paragraph 10 and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that, if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a. oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b. comment on the evidence supporting the charges in the indictment;

    c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed, and that the United States remains free, on appeal or collateral proceedings, to defend the legality and propriety of the sentences actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that she has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

11

b. the right to be presumed innocent until her guilt has been established beyond a reasonable doubt at trial;

c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d. the right to confront and cross-examine the witnesses who testify against her;

e. the right to compel or subpoena witnesses to appear on her behalf; and

f. the right to remain silent at trial, in which case her silence may not be used against her.

The defendant understands that, by pleading guilty, she waives or gives up those rights and that there will be no trial. The defendant further understands that, if she pleads guilty, the Court may ask her questions about the offenses to which she pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making a false statement. The defendant also understands that she has pleaded guilty to felony offenses and, as a result, will lose her right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

a. The defendant acknowledges, understands and agrees that, by pleading guilty pursuant to this plea agreement, she waives her right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of: (1) ineffective assistance of counsel; or (2) prosecutorial misconduct; and

b. The defendant expressly waives her right to appeal her sentence, directly or collaterally, on any ground except claims of: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an

12

unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal her sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **<u>Financial Obligations.</u>** By entering into this plea agreement, the defendant represents that she understands and agrees to the following financial obligations:

a. The Court may order the defendant to pay restitution to the IRS, and the defendant agrees that said restitution may include conduct charged in any counts of the indictment which are to be dismissed, and all other uncharged, related criminal activity;

b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine;

c. The defendant will fully and truthfully disclose all assets and property in which she has any interest, or over which the defendant exercises control, directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

d. Within ten (10) days of the execution of this plea agreement, at the request of the United States Attorney's Office, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the United States Probation Office. The defendant understands that compliance with these requests will be taken into account when the Government makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

e. The defendant hereby authorizes the United States Attorney's Office to obtain a credit report pertaining to her to assist the United States Attorney's Office in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

f. The defendant understands that a special assessment will be imposed as part of the sentence in this case. The defendant promises to pay the special assessment of $300.00 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case.

13

The defendant agrees to provide the Clerk's receipt as evidence of her fulfillment of this obligation at the time of sentencing;

g. The defendant certifies that she has made no transfer of assets or property for the purpose of: (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the United States Attorney's Office to enforce such financial obligations. Moreover, the defendant promises that she will make no such transfers in the future; and

h. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by $10,000 or more, the Government may, at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full restitution and fines imposed by any criminal or civil judgment, and also collect 100% of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of her rights, whether asserted directly or by a representative, to request or receive, or authorize any third party to request or receive, from any department or agency of the United States, any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of her claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the

14

signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the United States Probation Office or the Court that is intentionally misleading, incomplete or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw her pleas of guilty.

The defendant also understands and agrees that, in the event she violates this plea agreement, all statements made by her to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by her before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against her in any and all criminal proceedings. The defendant waives any rights that she might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by her subsequent to this plea agreement.

**20.** **Defendant's Representations.** The defendant acknowledges that she has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that she is satisfied with the assistance of counsel, and that counsel has fully advised her of her rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, her attorney, or any other party to induce her to enter her pleas of guilty.

15

Case 2:13-cr-04046-BCW   Document 33   Filed 06/01/15   Page 15 of 17

**21. No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above stated terms and conditions, together with any written supplemental agreement that might be presented to the Court *in camera*, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement, or any written supplemental agreement, do not constitute any part of the parties' agreement, and will not be enforceable against either party.

**22. Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles, and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

**Tammy Dickinson**
United States Attorney

By    /S/

Dated    6/1/15

**Anthony P. Gonzalez**
Assistant United States Attorney
Missouri Bar No. 29922

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement, and I voluntarily agree to it.

Dated    6/1/15             /S/
**Demetria Michele Brown**
Defendant

16

I am defendant Demetria Michele Brown's attorney.  I have fully explained to her her rights with respect to the offenses charged in the indictment.  Further, I have reviewed with her the provisions of the Sentencing Guidelines which might apply in this case.  I have carefully reviewed every part of this plea agreement with her.  To my knowledge, Demetria Michele Brown's decision to enter into this plea agreement is an informed and voluntary one.


Dated     6/1/15                             /S/
**Troy K. Stabenow**
Attorney for Defendant

17